## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CAROL ABRAMOVITZ, RAY
ABRAMOVITZ, RANDI ABRAMOVITZ,
and CHRISSY OWENS,

      **Plaintiffs,**

      **v.**

ATLANTIC SPECIALITY INSURANCE
COMPANY,

      **Defendant.**

Case No. 23-CV-2076-JAR

## MEMORANDUM AND ORDER

Plaintiffs Carol Abramovitz, Ray Abramovitz, Randi Abramovitz, and Chrissy Owens bring this lawsuit against Defendant Atlantic Specialty Insurance Company seeking underinsured motorist benefits following the death of Daniel Abramovitz ("Decedent").  Defendant asserts a counterclaim against Plaintiffs seeking a declaratory judgment that underinsured motorist coverage is not available to Plaintiffs under Defendant's policy.

Both parties filed Motions for Summary Judgment (Docs. 57, 59).  The motions are fully briefed, and the Court is prepared to rule.  For the reasons stated in more detail below, the Court denies Plaintiffs' motion for summary judgment, and grants Defendant's motion for summary judgment.

## I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[10]  The non-moving party cannot avoid

---

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[7] *Anderson*, 477 U.S. at 256.

[8] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[11]

"Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[12]  Cross summary judgment motions should be evaluated as two separate motions.[13]  Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[14]

## II.    Uncontroverted Facts

On or about October 30, 2020, Decedent Daniel Abramovitz was killed in an automobile accident in Leavenworth County, Kansas.  At the time of the accident, Decedent was operating a 2014 Ford Expedition owned by the Leavenworth County Sheriff's Department.  Decedent's vehicle was covered by Defendant's insurance policy, and it had a policy limit of $1,000,000.

Decedent collided with a 2006 Blue Bird School Bus operated by Cherie Williams.  The school bus was owned by Tonganoxie USD 464 ("Tonganoxie School District"), a public school district in Leavenworth County, Kansas.  At the time of the accident, the Tonganoxie School District possessed insurance through Kansas Educational Risk Management Pool, LLC ("KERMP") (the "KERMP policy"), a pool of public school districts.[15]

---

[11] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[12] *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc*., 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[13] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15] *See* Doc. 58-1. The Court will quote the specific policy provisions, as needed, in the Discussion section.

Plaintiffs, the surviving spouse and children of Decedent, allege that Cherie Williams was negligent in the operation of the school bus, resulting in Decedent's death.  By letter dated August 17, 2022, Plaintiffs' counsel advised Defendant that KERMP had tendered its $500,000 policy limit on behalf of the Tonganoxie School District and Williams.  The $500,000 paid to Plaintiffs by KERMP was the amount of the statutory cap imposed by the Kansas Tort Claims Act ("KTCA").  In this August 17 letter, Plaintiffs' counsel made a demand for underinsured motorist coverage under Defendant's policy.[16]  Defendant denied the claim.

Plaintiffs initially filed suit in Leavenworth County District Court against Intact Services USA, LLC d/b/a Atlantic Specialty Insurance Company.  Intact Services removed the case to this Court on the basis of diversity jurisdiction.  Upon removal, Intact Services moved to dismiss, stating that it was an improper party, and that Atlantic was the proper Defendant.  Plaintiffs amended the Complaint, naming Atlantic as Defendant.  Plaintiffs assert a claim for coverage under Defendant's insurance policy for uninsured motorist benefits and a claim under K.S.A. § 40-256 for interest and attorney's fees.

Defendant answered and filed a Counterclaim against Plaintiffs for a declaratory judgment that there was no coverage afforded to Plaintiffs under Defendant's insurance policy. Defendant also filed a Third-party Complaint against Leavenworth County, Kansas ("Leavenworth") for a declaratory judgment to resolve a dispute regarding whether coverage was afforded to Plaintiffs under the Defendant's policy.  The Court previously dismissed Leavenworth, finding that Leavenworth was not a proper party to Defendant's third-party

---

[16] *See* Doc. 59-3.  Again, the Court will address the specific policy language below.

complaint because there was no claim for relief asserted against Leavenworth.[17]  Plaintiffs and

Defendant filed cross motions for summary judgment on the remaining claims in this matter.

## III.    Discussion

Defendant moves for judgment as a matter of law in its favor on Plaintiffs' Complaint

and on its Counterclaim for Declaratory Judgment.  Plaintiffs move for judgment as a matter of

law in their favor on Defendant's Counterclaim and affirmative defenses.  There are three

primary issues.  First, the Court must determine whether the Tonganoxie school bus, driven by

Williams and covered by the KERMP policy, was underinsured.  Next, if the Tonganoxie school

bus was underinsured, the question is whether Defendant's policy provides coverage.  Finally,

Plaintiffs contend that Defendant should be precluded from enforcing the provisions of the

policy as a discovery sanction.  The Court will address each contention in turn.

## A.    Coverage Under the KERMP Policy

The Court must first determine whether the KERMP policy had a coverage limit of

$500,000 or $2 million dollars.  This issue is significant because it determines whether the

Tonganoxie School District was underinsured and whether Plaintiffs can seek underinsured

benefits from Defendant.  "[U]nderinsured motorist coverage enables the insured to recover from

his underinsured motorist carrier damages 'to the extent such coverage exceeds the limits of the

bodily injury coverage carried by the owner or operator of the other motor vehicle.'"[18]

Here, the Court must interpret the insurance policy and statutory language.  "Insurance

policies are contracts, and the interpretation of a contract is a question of law."[19]  When

---

[17] Doc. 33.

[18] *State Farm Mut. Auto. Ins. Co. v. Cummings*, 778 P.2d 370, 376–77 (Kan. Ct. App. 1989) (quoting K.S.A. § 40-284(b)), *abrogated on other grounds by Cashman v. Cherry*, 13 P.3d 1265 (Kan. 2000).

[19] *Progressive Nw. Ins. Co. v. Woods*, 665 F. Supp. 3d 1240, 1244 (D. Kan. 2023) (citing *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015)).

interpreting the language of an insurance policy, it "must, if possible, be construed in such way as to give effect to the intention of the parties."[20]  The insurer, as the preparer of its own contracts, "has a duty to make the meaning clear.  If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured."[21]

Likewise,

> the fundamental rule of statutory construction is that the intent of the legislature governs and, when construing a statute, a court should give words in common usage their natural and ordinary meaning.  Where a statute is clear and unambiguous, the court must give effect to the expressed legislative intent without regard to what the court thinks the law should or should not be. Legislative intent must be derived from the language of the statute and where the language used is plain and unambiguous the court must follow the intent as expressed by the words used.[22]

Defendant contends that Plaintiffs cannot make the threshold showing that the liability limits of Defendant's policy were less than the liability limits of the KERMP policy. Specifically, Defendant argues that the KERMP policy provides for $2 million in coverage, which is $1 million more than Defendant's $1 million policy limit.  Plaintiffs disagree and contend that the KERMP policy has a cap of $500,000 under the provisions of the contract and the KTCA.[23]  Thus, Plaintiffs argue that KERMP's policy limit is $500,000 less than Defendant's $1 million limit.

---

[20] *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002) (citations omitted).

[21] *Id.* (citations omitted).

[22] *Kilner v. State Farm Mut. Auto. Ins. Co.*, 847 P.2d 1292, 1297 (Kan. 1993) (citations omitted).

[23] The KTCA provides that "liability for claims within the scope of this act shall not exceed $500,000 for any number of claims arising out of a single occurrence or accident."  K.S.A. § 75-6105 (a).

The KERMP policy contains various coverages, including commercial general liability and business auto liability.[24]  The parties disagree about which type of coverage applies.[25]  Both types of coverage have a maximum policy limit of $2 million per occurrence, and both contain a limit on coverage.  The Court will first address the commercial general liability provisions as Plaintiffs primarily rely on these provisions, and then the Court will address the business auto liability provisions.

### 1.      Commercial General Liability Coverage

The KERMP's commercial general liability coverage provides $2 million for bodily injury claims.[26]  The policy, however, also has a KTCA Endorsement which modifies the coverage provided under the Commercial General Liability Coverage Form.[27]  This KTCA endorsement states that "[t]he Limits of Coverage for Personal and Advertising Injury and Each Occurrence shown in the Declarations, are amended to $500,000 for damages judicially determined to be subject to the Kansas Tort Claims Act, K.S.A. § 75-6101, et. seq."[28]  These provisions, taken together, limit the coverage amount to $500,000.  Thus, the policy limit under KERMP's commercial general liability provision is $500,000.

---

[24] Doc. 58-1 at 90, 234.

[25] Defendant shifts its position on which type of coverage applies in its summary judgment briefing.  In Defendant's motion for summary judgment, it does not contend that KERMP's Business Auto Liability provision is the applicable contractual provision.  Instead, it only addresses KERMP's Commercial General Liability Coverage provision.  In Defendant's reply to its motion for summary judgment and in its response to Plaintiffs' motion for summary judgment, however, Defendant argues that the Business Auto Liability provision is the applicable provision when considering the policy limits. Regardless of the applicable provision, Defendant contends that KERMP's policy limit was $2 million, which is more than Defendant's $1 million policy limit.  In contrast, Plaintiffs have always argued that the commercial general liability provisions apply.

[26] Doc. 58-1 at 201.

[27] *Id.* at 119.

[28] *Id.*

Defendant, however, contends that the KERMP policy's commercial general liability coverage is inapplicable based on the following exclusion:

> [C]overage does not apply to:
> . . . .
>
> g. Aircraft, Auto or Watercraft
>
> "Bodily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by . . . any member.  Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any member allege negligence or other wrongdoing . . . by that member, if the "occurrence" which caused the "bodily injury" . . . involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any member.[29]

In addition, the KERMP policy has an Endorsement relating to "Colleges or Schools."[30]  This endorsement limits commercial general liability coverage by stating:

> This coverage does not apply to:
>
> g. "Bodily injury" . . . arising out of the ownership, maintenance, operation, use, "loading or unloading" or entrustment to others of any aircraft, "auto" or watercraft that is owned, operated or hired by any member.  For the purpose of this exclusion, the word hired includes any contract to furnish transportation of your students to and from schools.
>
> This exclusion applies even if the claims against any member allege negligence or other wrongdoing . . . by that member, if the "occurrence" which caused the "bodily injury" . . . involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned, operated or hired by any member.[31]

---

[29] *Id.* at 94–97, 120.

[30] *Id.* at 123–24.

[31] *Id.*

Auto is defined as "[a] land motor vehicle . . . designed for travel on public roads."[32]

Based on these provisions, the commercial general liability provisions in the KERMP policy excludes coverage for bodily injury arising out of an automobile accident and school transportation. Thus, the accident between the Tonganoxie school bus and Decedent's vehicle is not covered under the commercial general liability provision. And neither the $2 million in coverage, nor the KTCA endorsement limiting damages to $500,000, is applicable because there is no coverage under the commercial general liability provision.

### 2.      Business Auto Liability Coverage

The KERMP policy also includes business auto liability coverage; Tonganoxie Unified School District No. 464 is a named member in the KERMP policy's Commercial Auto Liability Coverage Form.[33] Coverage includes "all sums a 'member' legally must pay as damages because of 'bodily injury' . . . to which this coverage applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[34] Auto is defined as "a land motor vehicle . . . designed for travel on public roads."[35]

Thus, the Tonganoxie school bus is covered under the KERMP policy's business auto liability coverage, and the accident between Decedent and the Tonganoxie school bus is covered. The question now is whether the policy provides for $2 million or $500,000 in coverage.

---

[32] *Id.* at 110.

[33] *Id.* at 278.  The document states both "commercial auto" and "business auto liability coverage."

[34] *Id.* at 237.

[35] *Id.* at 248.

The KERMP policy's business auto coverage provides a limit of $2 million for any one accident or loss for covered autos.[36]  It, however, also includes a "Kansas Tort Liability Endorsement," which states:

> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
>
> This coverage document does not apply to any claim against a "member" for which the "member"
>
>> (1) Is immune from liability by the provisions of any statute or where the action based upon such claim has been barred or abated by operation of statute or rule of civic procedure; or
>>
>> (2) Is not immune from such liability described in (1) above but is immune from further liability above any specific statutory limits cap on the maximum liability of the "member." However, this item (2) does not apply to the extent (if any) this coverage document provides coverage up to the maximum statutory liability limits cap.[37]

The parties disagree as to the amount of the maximum statutory cap in this case given the language in this endorsement.  Plaintiffs contend that the liability limit is $500,000, the limit of the statutory cap of a public entity's liability under the KTCA.[38]  Defendant argues that the $500,000 damages cap under K.S.A. § 75-6105 is not absolute, and the damages cap is raised under K.S.A. § 75-6111.

K.S.A. § 75-6105(a) provides that "[s]ubject to the provisions of K.S.A. § 75-6111, and amendments thereto, the liability for claims within the scope of [the KTCA] shall not exceed

---

[36] *Id.* at 278.

[37] *Id.* at 263.

[38] *See* K.S.A. § 75-6105(a).

$500,000 for any number of claims arising out of a single occurrence or accident."[39]  Under

K.S.A. § 75-6111:

> With regard to claims pursuant to the Kansas tort claims act,
> insurers of governmental entities may avail themselves of any
> defense that would be available to a governmental entity defending
> itself in an action within the scope of this act, except that the
> limitation on liability provided by subsection (a) of K.S.A. 75-
> 6105 and amendments thereto shall not be applicable where the
> contract of insurance provides for coverage in excess of such
> limitation in which case the limitation on liability shall be fixed at
> the amount for which insurance coverage has been purchased . .
> . .[40]

In addition, Kansas case law provides that "[t]he $500,000.00 limit of liability contained in

K.S.A. 75-6105 is . . . inapplicable where insurance has been purchased providing greater

coverage pursuant to K.S.A. 75-6111."[41]  Thus, under Kansas law, a governmental entity can

purchase insurance above the $500,000 statutory limit in § 75-6105.

Defendant contends that because the Tonganoxie School District procured an insurance

policy with a $2 million dollar limit per accident, the policy limit is $2 million dollars.  In

addition, Defendant states that the "maximum statutory liability limits cap" language in the

KERMP endorsement should be construed to mean the maximum statutory liability cap on

governmental entities under K.S.A. § 75-6111.  Defendant argues that because § 75-6111 allows

a governmental entity to obtain insurance above the $500,000 cap in § 75-6105, the new

maximum statutory liability cap is the amount of the governmental entity's insurance coverage.

Thus, in this case, Defendant contends that $2 million is the new statutory cap.

---

[39] *Id.* § 75-6105.

[40] *Id.* § 75-6111(a).

[41] *Jackson v. City of Kan. City*, 680 P.2d 877, 910 (Kan. 1984), *overruled on other grounds by Simmons v. Porter*, 312 P.3d 345 (Kan. 2013).

The Court disagrees.  K.S.A. § 75-6111 does indeed allow a governmental entity to purchase insurance above the KTCA's $500,000 cap, but it does not eliminate the damages cap under § 75-6105.  It simply states that the damages cap is inapplicable to insurance contracts that provide for coverage exceeding the statutory cap.[42]  At that point, the limit on liability "shall be fixed at the amount for which insurance coverage has been purchased."[43]

In addition, even if § 75-6111 raised the $500,000 statutory damages cap, this policy contains an endorsement that maintains the specific $500,000 cap set forth in § 75-6105.  The KERMP policy includes an endorsement *limiting* the $2 million dollar policy limit.  Indeed, the endorsement is entitled "Kansas Tort Liability Endorsement," and states that "this endorsement changes the coverage document."[44]  Specifically, it states that the endorsement modifies coverage to only include "specific statutory limits cap on the maximum liability of the member."[45]  The document also states that "this coverage document provides coverage *up to the maximum statutory liability limits cap*."[46]  To accept Defendant's argument would mean that the Kansas Tort Liability Endorsement meant that there was no maximum statutory cap, and this interpretation does not make sense.  If KERMP did not intend to limit the $2 million dollar policy limit, there would be no need to include the Kansas Tort Liability Endorsement and reference the maximum statutory liability limits cap.

Defendant also argues that if the KERMP policy intended to limit business auto coverage to $500,000, it could have done so by unambiguously using the same language it used in its

---

[42] *Id.* (stating that the $500,000 cap is inapplicable "where insurance has been purchased providing great coverage").

[43] *Id.*

[44] Doc. 58-1 at 263.

[45] *Id.*

[46] *Id.* (emphasis added).

commercial general liability coverage.  The commercial general liability coverage endorsement states that the limits for personal injury "are amended to $500,000 for damages judicially determined to be subject to the [KTCA]."[47]  Although the KERMP policy could have included the $500,000 specific language, the business auto liability provision included a specific Kansas Tort Liability Endorsement instead.  This endorsement changed the coverage document and stated that it explicitly limited liability above the maximum statutory liability limits cap.  Thus, the Court finds that the KERMP policy limited the amount of business auto liability to $500,000—the maximum amount of statutory liability permitted under the KTCA.

Because the KERMP policy only provides $500,000, the KERMP policy is $500,000 less than the $1 million provided for in Defendant's policy.  Thus, the Tonganoxie school bus was underinsured.  Accordingly, the Court must determine whether Defendant's policy provides coverage.

### B.      Coverage Under Defendant's Policy

Decedent was driving a Leavenworth County Sheriff's vehicle, insured by Defendant, when he died in the automobile accident with the Tonganoxie school bus.  Defendant argues that its policy does not provide coverage because the Tonganoxie school bus was a government-owned vehicle,[48] and its policy excludes government vehicles as uninsured, or underinsured, vehicles.  Plaintiffs argue that Defendant is attempting to exclude underinsured motorist coverage in contravention of K.S.A. § 40-284(b) by defining the Tonganoxie school bus as an uninsured vehicle.

---

[47] *Id.* at 119.

[48] There is no dispute that the Tonganoxie school bus is a government-owned vehicle.

### 1.      The Uninsured Motorist Statute

K.S.A. § 40-284, the uninsured motorist statute, was enacted in Kansas in 1968.[49]  "This statute allowed motorists who incurred damages in an automobile accident with an individual who had no automobile insurance to recover benefits for those damages from their own insurance company, up to the limits of their coverage."[50]  "In 1981, the legislature amended the law to include within the uninsured motorist statute provisions for coverage for underinsured motorists."[51]  Specifically, K.S.A. § 40-284(b) provides:

> Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.[52]

The Kansas Supreme Court has stated:

> The uninsured and underinsured motorist statutes are remedial in nature.  They should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arise out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured or underinsured motorist.[53]

---

[49] *Rich v. Farm Bureau Mut. Ins. Co.*, 824 P.2d 955, 957 (Kan. 1992).

[50] *Id.*

[51] *Id.*

[52] K.S.A. § 40-284(b).

[53] *Rich*, 824 P.2d at 959.

Furthermore, "[a]n insurance provision which denies protection otherwise required by the statute 'is an attempt to limit or dilute the unqualified uninsured motorist coverage mandated by K.S.A. 40-284 and is therefore void and unenforceable.'"[54]

The Kansas legislature, however, expressly permits certain limitations and exclusions to uninsured and underinsured motorist coverage.[55]  Specifically, K.S.A. § 40-284(e)(1)–(6) sets forth six exclusions or limitations.[56]  Pertinent to the issue in this case, K.S.A. § 40-284(e)(2) provides that "[a]ny insurer may provide for the exclusion or limitation of coverage . . . when the uninsured automobile is owned by . . . any governmental entity."[57]

### 2. Defendant's Policy Language

Defendant's policy contains an endorsement, entitled "Kansas Uninsured Motorists Coverage."[58]  The policy provides that "[w]e will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle.'"[59]  In addition, Defendant's policy states:

> With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under this coverage only if a. or b. below applies:
>
> a.  The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or
>
> b.  A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we

---

[54] *Morrison v. GEICO Gen. Ins. Co.*, 350 F. Supp. 3d 1003, 1007 (D. Kan. 2018) (quoting *Simpson v. Farmers Ins. Co. Inc.*, 592 P.2d 445, 450 (Kan. 1979)).

[55] *Cannon v. Farmers Ins. Co., Inc.*, 50 P.3d 48, 51–52 (Kan. 2002).

[56] K.S.A. § 40-484(e)(1)–(6).

[57] K.S.A. § 40-484(e)(2).

[58] Doc. 59-3 at 256–57.

[59] *Id.*

> (1) Have been given prompt written notice of such
> tentative settlement; and
>
> (2)  Advance payment to the "insured" in an amount
> equal to the tentative settlement within 60 days after
> receipt of notification.[60]

The policy then defines "uninsured motor vehicles."  Specifically,

> "Uninsured motor vehicle" means a land motor vehicle or "trailer":
>
> a.  For which no liability bond or policy at the time of an
> "accident" provides at least the amounts required by Kansas law;
>
> b.  That is an underinsured motor vehicle.  An underinsured motor
> vehicle is a land motor vehicle or "trailer" for which the sum of all
> liability bonds or policies at the time of an "accident" provides at
> least the amounts required by Kansas law, but their limits are less
> than the limit of this insurance;
>
> c.  For which an insuring or bonding company denies coverage or
> is or becomes insolvent;
> . . . .
>
> However, "uninsured motor vehicle" does not include any vehicle:
> . . . .
>
> b.  Owned by a governmental unit or agency . . . .[61]

### 3.    Defendant's Policy Language Construed with the Statutory Language

Defendant's uninsured motorist provision excludes from coverage uninsured vehicles owned by a government agency.  Pursuant to K.S.A. § 40-284(e)(2), Defendant is specifically allowed to exclude or limit coverage "when the uninsured automobile is owned by a self-insurer or any governmental entity."[62]  Thus, Defendant's unambiguous policy provision, and the clear statutory language allows Defendant to do so.

---

[60] *Id.*

[61] *Id.* at 259.

[62] K.S.A. § 40-284(e)(2).

Defendant's policy, however, also states that *underinsured* vehicles are considered *uninsured* vehicles. Thus, per the plain language of the policy, underinsured *and* uninsured vehicles owned by a government agency are excluded from coverage. The question is whether Defendant can exclude an underinsured vehicle owned by a governmental entity from coverage. Plaintiffs contend that Defendant cannot, and Defendant argues that it can. No Kansas court has yet addressed whether it is permissible to do so.

Plaintiffs argue that the plain language, and the remedial nature of § 40-284(e)(2), only allows an insurer to limit or exclude coverage on an *uninsured* automobile owned by a governmental entity—not an *underinsured* automobile owned by a governmental entity. Plaintiffs further contend that Defendant is trying to circumvent § 40-284(b), which requires that "[a]ny uninsured motorist coverage shall include an underinsured motorist provision."[63]

Defendant argues that Plaintiffs' argument regarding the word "uninsured" automobile in § 40-284(e)(2) is a hyper-technical reading of the statute that ignores how both the legislature and courts have used the word. It contends that § 40-284(b) requires that an underinsured motorist provision be part of uninsured motorist coverage, and § 40-284(e) identifies the six exemptions that can be excluded from uninsured and underinsured motorist coverage. Defendant asserts that its policy dovetails with Kansas's statutory scheme because underinsured coverage is treated as a component of statutorily mandated uninsured coverage. In addition, Defendant contends that the unambiguous language of its policy clearly excludes underinsured government vehicles from coverage.

The Court agrees with Defendant. The Court first notes that Defendant's policy is unambiguous. It clearly excludes coverage if the uninsured or underinsured vehicle is owned by

---

[63] *Id.* § 40-284(b).

a governmental unit or agency.  The only remaining question is whether the policy exclusion comports with Kansas law, and the Court concludes that it does.

K.S.A. § 40-284(e)(2) states that "[a]ny insurer may provide for the exclusion or limitation of coverage . . . when the uninsured automobile is owned by a self-insurer or any governmental entity."[64]  Plaintiffs are correct that the plain language of § 40-284(e)(2) only applies to *uninsured* automobiles.  However, the statutory scheme of § 40-284 and Kansas case law shows that it encompasses *underinsured* automobiles as well.

First, underinsured motorist coverage is a component of uninsured coverage because K.S.A. § 40-284(b) specifically requires "[a]ny uninsured motorist coverage" to "include an underinsured motorist provision."[65]  Indeed, in *McTaggart v. Liberty Mutual Insurance*,[66] the Kansas Supreme Court noted this principle.  In that case, the court considered whether a form that rejected both uninsured and underinsured motorist coverage comported with § 40-284(c),[67] which allows an insured "to reject, in writing, the *uninsured* motorist coverage required by subsections (a) and (b)."[68]  The Kansas Supreme Court stated that "although, the two coverages are separate, the statute treats the underinsured motorist coverage as a subcategory of uninsured motorist coverage 'include[d]' in the uninsured motorist coverage."[69]  Accordingly, even though § 40-284(c) only references rejection of *uninsured* motorist coverage, the insurer's form

---

[64] *Id.* § 40-284(e)(2).

[65] *Id.* § 40-284(b).

[66] 983 P.2d 853 (Kan. 1999).

[67] *Id.* at 855.

[68] K.S.A. § 40-284(c)

[69] *McTaggart*, 983 P.2d at 860 (alteration in original) (quoting K.S.A. § 40-284(b)).

allowing for rejection of both *underinsured* and *uninsured* motorist coverage complied with the statute.[70]

Furthermore, Kansas case law consistently interprets the word *uninsured* in K.S.A. § 40-284(e) to include *underinsured*.  Although no Kansas case has considered the exclusion under § 40-284(e)(2), Kansas cases have considered the exclusions listed in § 40-284(e)(1), (4), and (6).  In each case, the exclusions set forth in § 40-284(e) were held applicable to underinsured coverage.

In *Davis v. Allstate Insurance Co.*,[71] the Kansas Court of Appeals examined § 40-284(e)(1).  That provision states that an insurer "may provide for the exclusion or limitation of coverage . . . when the insured is occupying or struck by an *uninsured* automobile or trailer owned or provided for the insured's regular use."[72]  In *Davis*, the plaintiff was hurt in an accident and sought *underinsured* benefits.[73]  The Kansas Court of Appeals had to determine whether the vehicle involved was provided for the insured's regular use.[74]  Although the statute explicitly states *uninsured* automobile, the court found that "[t]he [uninsured/underinsured] distinction is immaterial for purposes of [its] analysis."[75]  The court ultimately concluded that the exclusion under §40-284(e)(1) was applicable and because the *underinsured* vehicle was "provided for the insured's regular use," the policy did not provide underinsured motorist coverage for the

---

[70] *Id.*  In that case, the rejection form specifically included a reference to underinsured motorist coverage. *Id.* at 647–48.  If the uninsured provisions and underinsured provisions were in separate places in the policy, and the rejection form did not include a reference to underinsured motorist coverage, the form would not comport with K.S.A. § 40-284(c).  *See McLean v. Nat'l Union Fire Ins. Co.*, 493 P.3d 968, 974–75 (Kan. Ct. App. 2021).

[71] 143 P.3d 413 (Kan. Ct. App. 2006).

[72] K.S.A. § 40-284(e)(1) (emphasis added).

[73] *Davis*, 143 P.3d at 414–15.

[74] *Id.* at 415–16.

[75] *Id.* at 416.

plaintiff's injuries.[76]  Accordingly, although § 40-284(e)(1) only explicitly states *uninsured* automobile, the Kansas Court of Appeals found that the exclusion was also applicable to an *underinsured* automobile.

In addition, multiple Kansas cases interpreting different subsections of § 40-284(e) state that § 40-284(e) allows insurers to limit uninsured *and* underinsured motorist coverage.  For example, in *Rich v. Farm Bureau Mutual Insurance Co.*,[77] the Kansas Supreme Court noted that K.S.A. § 40-284(b) requires that uninsured motorist coverage include an underinsured motorist provision.[78]  The court then stated that "other pertinent language of K.S.A. 40-284 allows an insurer to exclude or limit its uninsured and *underinsured* motorist coverage."[79]  And in *Kilner v. State Farm Mutual Automobile Insurance Co.*,[80] the Kansas Supreme Court stated that K.S.A. § 40-284(e) "allows an insurer to *exclude or limit* its uninsured and *underinsured* motorist coverage."[81]  The court specifically inserted "underinsured motorist" coverage into the statutory language by stating that § 40-284(e) provides in part that "(e) [a]ny insurer may provide for the exclusion or limitation of [underinsured motorist] coverage."[82]

The Kansas Court of Appeals interprets the statute in the same manner.  In *Brown v. USAA Casualty Insurance Co.*,[83] the Kansas Court of Appeals stated that § 40-284(e) "provides a

---

[76] *Id.*

[77] 824 P.2d 955 (Kan. 1992).

[78] *Id.* at 957.

[79] *Id.* (emphasis added) (interpreting K.S.A. § 40-284(e)(6)).

[80] 847 P.2d 1292 (Kan. 1993).

[81] *Id.* at 1295 (emphasis added) (interpreting K.S.A. § 40-284(e)(4)); *see also Tyler v. Emp'rs Mut. Cas. Co.*, 49 P.3d 511, 518 (Kan. 2002) (interpreting K.S.A. § 40-284(e)(4) and determining that "[t]he legislature intended K.S.A. 40-284(e)(4) to permit an insured to recover [uninsured/underinsured] benefits which are not duplicative of workers compensation benefits.").

[82] *Kilner*, 847 P.2d at 1295 (alterations in original).

[83] 840 P.2d 1203 (Kan. Ct. App. 1992).

list of permissible exclusions or limitations to [uninsured] *or* [*underinsured*] coverage."[84]
Because the policy limitation in that case was based on an exhaustion clause, which is not
included in the list of exclusions, the court found that it was unenforceable.[85]  And in *Bardwell v.
Kester*,[86] the Kansas Court of Appeals stated that "40-284(e) sets forth a limited number of
exclusions and limitations which insurance carriers are authorized to include as
uninsured/*underinsured* policy provisions."[87]

In sum, K.S.A. § 40-284(b) requires that an insurer include underinsured motorist
coverage.  But an insurer is permitted to include limitations if those limitations are authorized by
law.  And K.S.A. § 40-284(e) sets forth a list of permissible limitations and exclusions.  Kansas
case law consistently interprets the exclusions listed in § 40-284(e) to be applicable to both
uninsured and underinsured coverage.  Thus, § 40-284(e)(2) applies to both uninsured and
underinsured government vehicles.

In addition, the Court must generally interpret a statute "so as to avoid unreasonable
results."[88]  Here, if the exclusion listed in § 40-284(e)(2) was only applicable to an uninsured
government vehicle, and not to an underinsured government vehicle, it would lead to an
unreasonable result.  In this case, had Decedent been involved in an accident with an uninsured
government-owned vehicle, he would not recover anything from the uninsured driver, and he
would not be able to recover from his own insurance due to the exclusion of uninsured

---

[84] *Id.* at 1205 (emphasis added).

[85] *Id.*  Plaintiffs argue that the Kansas Court of Appeals stated in *Brown* that an exclusion not provided for in the list under § 40-284(e) is unenforceable.  But the Kansas Court of Appeals in that case explicitly stated that "§ 40-284(e) provides a list of permissible exclusions or limitations to [uninsured] or [*underinsured*] coverage."  *Id.* Thus, the court applied the exclusions set forth in § 40-284(e) to underinsured coverage.

[86] 815 P.2d 120 (Kan. App. Ct. 1991).

[87] *Id.* at 122 (emphasis added) (interpreting K.S.A. § 40-284(e)(6)).

[88] *Kansas v. Mishmash*, 290 P.3d 243, 246 (Kan. 2012).

government-owned vehicles.   Interpreting § 40-284(e)(2) to include coverage for underinsured government-owned vehicles would mean that he would recover from the underinsured driver, and he would also receive additional benefits from his own insurance due to the government-owned vehicle being underinsured.  The Court cannot discern why the legislature would allow for zero coverage for an uninsured government vehicle while allowing for recovery for an underinsured government vehicle.   Thus, interpreting § 40-284(e)(2) to encompass underinsured government vehicles leads to a more rational result.[89]

In sum, the uninsured and underinsured motorist statutes are remedial and should be broadly construed to provide broad protection.  However, "[i]nsurance policy provisions . . . may condition, limit, or dilute uninsured motorist coverage as long as such exclusions and limitations fall within the exclusions and limitations expressly allowed by statute."[90]  "The courts will not permit a dilution or diminution of the statutorily required [uninsured] coverage, but neither will the courts extend an insurance carrier's risk or extent of liability beyond that for which it has bargained."[91]  Here, Defendant's policy unambiguously excludes underinsured government-owned vehicles from coverage, which is permissible under § 40-284(e)(2).  Thus, Plaintiffs are not entitled to underinsured motorist coverage under Defendant's policy.

## C.     Plaintiffs' Sanction Request

Plaintiffs argue that Defendant failed to timely produce certain discovery in this case, despite two previous orders to do so.  As a sanction, Plaintiffs state that Defendant should be precluded from providing evidence that it delivered a copy of its policy to the insured,

---

[89] The Court recognizes that this result—excluding uninsured and underinsured government vehicles from coverage—may be harsh.  The legislature, however, specifically allowed for the exclusion of government vehicles in § 40-284(e)(2).  And the Court must follow the statutory language.

[90] *Ball ex rel. Ball v. Midwestern Ins. Co.*, 829 P.2d 897, 900 (Kan. 1992).

[91] *Richert v. McHone*, 135 P.3d 767, 769 (Kan. Ct. App. 2006) (citation omitted).

Leavenworth County.  Without evidence that Defendant delivered the policy, Plaintiffs argue that Defendant cannot enforce the provisions and exclusions in the policy.  The Court denies Plaintiffs' request for sanctions.

First, the Court notes that it is uncontroverted that a copy of Defendant's insurance policy was delivered to Leavenworth County's insurance agent.  In addition, there is no question that this insurance policy covered Leavenworth County.  Indeed, Plaintiffs' entire claim is based on Defendant's insurance policy as they are seeking underinsured benefits under the policy.

Next, the Court recognizes that Fed. R. Civ. P. 37(b)(2) provides that the Court may sanction a party who fails to obey a discovery order by "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."[92]  Presiding Magistrate Judge Gwynne Birzer issued two previous orders regarding the timing of discovery.[93]  The Court has reviewed the latest order on the dispute, dated October 20, 2023.[94]

In that October 20 Order, Judge Birzer proposed monetary sanctions against Defendant if Defendant did not comply with her order to supplement and certify that it had fully responded to specific discovery by 5:00 p.m. that day.[95]  However, Judge Birzer stated that she would issue a separate order if she determined that sanctions should be imposed.[96]  There is no indication on the docket that there were any additional discovery disputes on this issue presented to Judge Birzer, and an additional order was not issued on this matter.  Had Plaintiffs believed that

---

[92] Fed. R. Civ. P. 37(b)(2)(A)(ii).

[93] *See* Docs. 39, 52.

[94] Doc. 52.

[95] *Id.* at 3.  The maximum amount of monetary sanctions appears to be $10,000.

[96] *Id.*

sanctions should have been imposed, they should have raised the issue with Judge Birzer, particularly because Judge Birzer had already outlined the sanctions for non-compliance in her October 20 Order.  Furthermore, any sanction "should always be measured, proportionate, and in the interests of justice."[97]  Plaintiffs' requested sanction to preclude Defendant from relying on the policy exclusions is disproportionate to the alleged violation as it would effectively preclude Defendant's defense and counterclaim.

Finally, Plaintiffs' argument would seem to foreclose Plaintiffs' claim for benefits because it revolves around the existence of Defendant's insurance policy and enforcing its provisions.  To determine whether underinsured coverage exists under a policy, it requires "a limits-to-limits comparison" between the two insurance policies at issue.[98]  Thus, if Defendant's policy was excluded, it is unclear how Plaintiffs' requested sanction helps them.  Accordingly, the Court will not impose the sanction of precluding Defendant from enforcing its policy provisions.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 57) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 59) is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 2, 2024

---

[97] *U.S. Dep't of Labor v. Mr. Cao's LLC*, No. 22-1165-TC-RES, 2024 WL 896198, at *8 (D. Kan. Mar. 1, 2024) (quoting *In re Homeadvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KLM, 2023 WL 196414, at *28 (D. Colo. Jan. 16, 2023)).

[98] *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 66 P.3d 822, 826 (Kan. 2003) (quoting *Halsey v. Farm Bureau Mut. Ins. Co.*, 61 P.3d 691, Syl. ¶ 4 (Kan. 2003)).

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE